Josh Lamborn, OSB #973090
jpl@pdxinjury.com
The Law Office of Josh Lamborn, P.C.
50 SW Pine St., Suite 301
Portland, OR 97204-3535
Phone: (503) 546-0461
Fax: (503) 914-1507

Attorney for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| MATTHEW KAPLAN, in his capacity as Personal Representative of The Estate of Zahavah Townsend, | Case No. 3:23-cv-00846-HZ |
| | **SECOND AMENDED COMPLAINT** |
| Plaintiff, | Wrongful Death (Negligence / Abuse of a Vulnerable Person); Civil Rights Violations |
| v. | |
| STATE OF OREGON, by and through its Department of Human Services, and DANNE SLEZAK, in her individual capacity, | JURY TRIAL DEMANDED |
| | Not Subject to Mandatory Arbitration |
| Defendants | Filing Fee: ORS 21.160(1)(e) - $1,178.00; Amount Prayed For: $17,265,000 |

Plaintiff alleges:

## GENERAL ALLEGATIONS

1.

Matthew Kaplan is the duly appointed personal representative for The Estate of

Zahavah Townsend ("THE ESTATE"). Zahavah Townsend ("ZAHAVAH") was a 5-

**SECOND AMENDED COMPLAINT**

year-old girl (DOB: 9/8/2017) and a resident of and domiciled in the State of Oregon at the time of her death on November 20, 2022.

2.

The Department of Human Services ("DHS") is a duly authorized agency of defendant State of Oregon. DHS is responsible for the delivery and administration of programs and services to children and families, including but not limited to child protective services and foster care.

3.

At all material times, Danne Slezak ("SLEZAK") was a resident of Klamath County, Oregon, and was acting in the course and scope of her employment for the State of Oregon as a DHS child protective service ("CPS") caseworker.

4.

Amber Gonzalez-Riddle ("RIDDLE") is a 27-year-old (DOB: 5/11/1996) resident of Portland, Oregon, in Multnomah County and ZAHAVAH's biological mother. At all material times, DHS knew RIDDLE was in an intimate relationship with Geavony Ferreira ("FERREIRA").

5.

At all material times, DHS knew or should have known RIDDLE had drug and alcohol addictions that affected her ability to safely parent ZAHAVAH.

**SECOND AMENDED COMPLAINT**

6.

At all material times, DHS knew or should have known FERREIRA was a gang associate and had a violent criminal history, including convictions for Attempted Assault in the Second Degree and Unlawful Use of a Weapon, for which he was on post-prison supervision, stemming from an incident in which he stabbed a man in the throat.

7.

On or between September 5 and September 8, 2022, DHS received multiple calls to the child abuse hotline alleging RIDDLE had substance abuse problems, specifically fentanyl. One of the reports to the hotline also alleged FERREIRA shot a gun at RIDDLE's apartment, striking it multiple times, while RIDDLE and ZAHAVAH were inside. DHS opened an assessment, and on information and belief, SLEZAK interviewed ZAHAVAH. She told SLEZAK she witnessed FERREIRA shoot the gun and RIDDLE told her to "stay down" and away from the windows. A courtesy CPS caseworker later visited RIDDLE's home and saw bullet holes throughout the front of RIDDLE's apartment. However, RIDDLE denied FERREIRA was responsible for the shooting. DHS closed the assessment as "unfounded."

8.

On or about September 6, 2022, ZAHAVAH's father, Glenn Townsend ("TOWNSEND"), applied for an Immediate Danger Order in Klamath County Circuit Court, based on the shooting incident at RIDDLE's apartment in Multnomah County.

**SECOND AMENDED COMPLAINT**

9.

On or about September 7, 2022, Klamath County Circuit Court Judge Kelly Ritzer ruled on the motion, found ZAHAVAH was in immediate danger and ordered no parenting time for RIDDLE. That order was later modified on October 10, 2022, by Klamath County Senior Circuit Court Judge Roxanne Osborne to allow RIDDLE to exercise parenting time one three-day weekend of each month, in Klamath County, Oregon, only, with all other conditions of the Immediate Danger Order to remain in effect.

10.

On or about October 28, 2022, FERREIRA discovered RIDDLE was involved in an intimate relationship with another man. FERREIRA showed up at RIDDLE's apartment and confronted the other man. RIDDLE was present with her younger child when FERREIRA shot the other man in the stomach and sped away in his car. FERREIRA was indicted for Attempted Murder in the Second Degree with a Firearm, Assault in the First Degree with a Firearm, Unlawful Use of a Weapon with a Firearm and Felon in Possession of a Firearm, but was not arrested until January 4, 2023.

11.

On or about November 20, 2022, while RIDDLE was visiting ZAHAVAH in Klamath County pursuant to the Immediate Danger Order, she reported to the DHS child abuse hotline seeing a bruise on ZAHAVAH's face. RIDDLE reported that

**SECOND AMENDED COMPLAINT**

ZAHAVAH told her TOWNSEND's significant hit her in the head when she and TOWNSEND were arguing in their home a few days prior.

12.

On or about November 20, 2022, at approximately 2:30 p.m., CPS caseworker SLEZAK met with RIDDLE in a Walmart parking lot in Klamath Falls, Oregon. RIDDLE and FERREIRA arrived in a green Honda Accord with ZAHAVAH asleep in the back seat without a booster seat. SLEZAK interviewed ZAHAVAH in the car and smelled an odor of marijuana in the car. SLEZAK put together a protective action plan for ZAHAVAH to go back to Portland with RIDDLE and FERREIRA, despite the Immediate Danger Order. SLEZAK called the DHS "on call supervisor" Chandra Awbrey ("AWBREY"), who approved the plan.

13.

On November 20, 2022, numerous witnesses reported RIDDLE speeding, driving recklessly and passing cars around blind corners. At approximately 6:09 p.m., RIDDLE crossed into the oncoming traffic lane and hit a Toyota RAV4 head-on. ZAHAVAH was not in a booster seat, as required by Oregon law. As a result, the seatbelt was across her stomach, rather than her pelvis area, and ZAHAVAH suffered fatal injuries in the crash.

14.

After the crash, police interviewed RIDDLE, who admitted she consumed two "Steele Reserve" malt liquors and a shot of "Azul" tequila that morning. RIDDLE also

**SECOND AMENDED COMPLAINT**

admitted she smoked marijuana at her father's house in Bonanza, Oregon, before she met with DHS and took "a couple more hits" of marijuana in Chemult, Oregon, after she left for Portland. RIDDLE told police she is a "lightweight" and gets stoned easily. A blood draw two hours after the crash resulted in a blood-alcohol content of .076%. Police interviewed FERREIRA, who admitted he was drinking alcohol and smoking marijuana in the car as RIDDLE drove. Police confirmed the car smelled of marijuana, and they found empty alcohol containers and a stolen handgun in the car.

15.

On March 8, 2023, a Lane County Grand Jury indicted RIDDLE on the following charges: Manslaughter in the First Degree, two counts of Assault in the Third Degree, Driving Under the Influence of Intoxicants and three counts of Recklessly Endangering Another Person.

16.

A tort claim notice was timely sent to DHS pursuant to ORS 30.275.

### FIRST CLAIM FOR RELIEF – WRONGFUL DEATH

### Count 1 – Negligence (Against DHS)

17.

Plaintiff realleges and incorporates herein paragraphs 1-16.

18.

DHS's casework was below the applicable or reasonable standard of care, was

**SECOND AMENDED COMPLAINT**

negligent and unreasonably and foreseeably caused ZAHAVAH's death in one or more of the following ways:

 A. Failing to adequately investigate the September 5, 2022, CPS assessment at RIDDLE's apartment in Portland, Oregon;

 B. Failing to accurately identify the appropriate disposition in the September 5, 2022, CPS assessment;

 C. Failing to remove ZAHAVAH from RIDDLE's care after the September 5, 2022, assessment; and

 D. Failing to open an assessment and investigate the October 28, 2022, shooting at RIDDLE's apartment in Portland, Oregon.

19.

Defendant's negligence caused ZAHAVAH to incur pain and suffering during the period between the onset of the crash and her death, thereby entitling THE ESTATE to an award of non-economic damages in the sum of $250,000.00.

20.

Defendant's negligence caused the beneficiaries of THE ESTATE to suffer the loss of society and companionship of ZAHAVAH, entitling THE ESTATE to an award of non-economic damages in the sum of $5,000,000.00.

21.

Defendant's negligence caused THE ESTATE pecuniary loss in the future, the

**SECOND AMENDED COMPLAINT**

present value of which is the approximate sum of $500,000.00.

22.

Defendant's negligence caused THE ESTATE to incur the approximate sum of $5,000.00 for the reasonable burial and funeral expenses of ZAHAVAH.

### Count 2 – Negligence (Against DHS)

23.

Plaintiff realleges and incorporates herein paragraphs 1-22.

24.

DHS's casework was below the applicable or reasonable standard of care, was negligent and unreasonably and foreseeably caused ZAHAVAH's death in one or more of the following ways:

A. Choosing to place ZAHAVAH with RIDDLE on November 20, 2022, in direct violation of the Immediate Danger Order;

B. Failing to adequately investigate whether RIDDLE and/or FERREIRA were under the influence of intoxicants on November 20, 2022;

C. Failing to observe the interior of RIDDLE's vehicle prior to her departure for Portland;

D. Failing to observe if RIDDLE had adequate child-safety restraints for ZAHAVAH, including a booster seat, in her vehicle before she left for Portland on November 20, 2022; and

**SECOND AMENDED COMPLAINT**

E. Failing to adequately train SLEZAK.

25.

Defendants' negligence, and each of them, as alleged in Count 2, caused THE ESTATE to suffer the damages alleged in paragraphs 19-22.

**Count 3 – Abuse of a Vulnerable Person – ORS 124.105**

**(Against DHS)**

26.

Plaintiff realleges and incorporates herein paragraphs 1-25.

27.

ZAHAVAH was at all relevant times vulnerable and entitled to the protection of ORS 124.100 et seq., because she was an incapacitated person for purposes of ORS 124.100(1)(e)(C) and ORS 125.005(5), since a condition existed in which her ability to receive and evaluate information effectively or to communicate decisions was impaired to such an extent that she did at the relevant times presently lack the capacity to meet the essential requirements for her physical health or safety, including those actions necessary to provide the health care, food, shelter, clothing, personal hygiene and other care without which serious physical injury or illness was likely to, and did, occur. Specifically, a condition existed such that ZAHAVAH lacked a wide range of cognitive and functional abilities relating to receipt and evaluation of information and communication, including:

**SECOND AMENDED COMPLAINT**

A. Her ability to use and understand words, regardless of whether they were written or spoken, was extremely limited;

B. She was unable to communicate effectively with or otherwise engage others, including those who may have been in a position to help her meet her basic needs. Despite use of her limited abilities to receive and evaluate information when she was able to do so, and use of her limited abilities to communicate when she was able to do so, ZAHAVAH was in fact unable to meet her basic health and safety needs;

C. She was unable to understand basic concepts related to self-care, medical treatment, common dangers and personal safety;

D. She was wholly unable to manage money or purchase necessities and had no money;

E. She was unable to understand (i) she had the need and the right to be protected from abuse; (ii) she had basic needs and rights to bodily integrity; and (iii) the nature of the danger to which she was being subjected;

F. She was unable to make or to communicate any decision that would meet her essential requirements for physical health and safety;

G. At the times the abuse occurred, ZAHAVAH was isolated from anyone who might have been able to help her, except the perpetrator(s) of her abuse; and

**SECOND AMENDED COMPLAINT**

H.  She was unable to place phone calls, to communicate electronically or in any way to contact law enforcement or anyone else to meet her needs.

28.

The conduct alleged in paragraphs 13 and 14 constituted physical abuse within the meaning of ORS 124.105.

29.

Pursuant to ORS 124.100(2) and (5), defendant DHS is responsible for the physical abuse of ZAHAVAH as alleged in paragraphs 13 and 14, because DHS permitted RIDDLE to engage in the abuse by knowingly acting and failing to act under circumstances in which a reasonable person should have known that the sort of abuse inflicted on ZAHAVAH would occur.

30.

As a result of the defendant's acts and omissions as alleged in this Second Claim for Relief, THE ESTATE suffered the damages alleged in paragraphs 19-22 and is entitled to an amount equal to three times the economic and non-economic damages, pursuant to ORS 124.100(2)(a) and (b).

31.

THE ESTATE is entitled to reasonable attorney fees pursuant to ORS 124.100(2)(c) and reasonable fees for services of the personal representative pursuant to ORS 124.100(2)(d).

**SECOND AMENDED COMPLAINT**

## SECOND CLAIM FOR RELIEF

## Deprivation of Civil Rights – 42 US.C. § 1983 (Against SLEZAK)

32.

Plaintiff realleges and incorporates herein paragraphs 1-31.

33.

At all material times, SLEZAK was acting under color of state law, statutes, administrative rules, customs, policies and usages of DHS and the State of Oregon and assumed the responsibilities, activities and rights involved in exercising her role in DHS. SLEZAK is sued in her individual capacity pursuant to 42 U.S.C. §1983.

34.

At all material times, SLEZAK had the time and the ability to deliberate whether to leave ZAHAVAH with her father under a protective action plan that included no contact with her father's girlfriend or to take temporary custody of ZAHAVAH and place her in a foster home or facilitate her placement with other relatives in Klamath County. In choosing to place ZAHAVAH with RIDDLE, SLEZAK produced a state-created danger.

35.

SLEZAK deprived ZAHAVAH of the rights guaranteed to her under the Fourteenth Amendment to the United States Constitution by depriving her of:

A. Her right to be free of physical abuse and neglect;

**SECOND AMENDED COMPLAINT**

  B. Her right to life;

  C. Her right to liberty; and

  D. Her right to substantive due process.

36.

SLEZAK's actions were a substantial departure from the exercise of reasonable professional judgment, and she was deliberately and knowingly indifferent to the constitutional rights of ZAHAVAH in one or more of the following ways:

  A. Allowing RIDDLE to take custody of ZAHAVAH, despite knowing about RIDDLE's history of drug addiction and smelling marijuana in her vehicle;

  B. Allowing RIDDLE to take custody of ZAHAVAH without investigating whether RIDDLE and/or FERREIRA were under the influence of intoxicants;

  C. Allowing RIDDLE to take custody of ZAHAVAH without investigating whether RIDDLE had appropriate child safety restraints in her vehicle; and

  D. Allowing RIDDLE to take custody of ZAHAVAH, despite an Immediate Danger Order limiting her contact with ZAHAVAH.

**SECOND AMENDED COMPLAINT**

37.

SLEZAK's acts and omissions, as set forth above, were the real and proximate cause of ZAHAVAH's suffering and death, and ZAHAVAH's death was a reasonably foreseeable result of those acts and omissions. THE ESTATE is entitled to $5,000,000.00 to compensate for her suffering and death.

38.

Pursuant to 42 U.S.C. §1988, THE ESTATE is entitled to recover reasonable and necessary attorney fees and costs incurred in the prosecution of this action.

39.

Pursuant to 42 U.S.C. §1988, THE ESTATE seeks an award of punitive damages to punish and deter defendant in an amount to be determined by a jury.

### PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment against defendants as follows:

1. On the First Claim for Relief for Wrongful Death, Counts One and Two:

    a. Non-economic damages in the form of pain and suffering in the sum of $250,000.00;

    b. Non-economic damages in the form of loss of society and companionship in the sum of $5,000,000.00;

    c. Economic damages in the form of future pecuniary loss in the

**SECOND AMENDED COMPLAINT**

sum of $500,000.00;

d. Economic damages in the form of burial and funeral expenses in the sum of $5,000.00; and

e. Costs and disbursements incurred herein.

2. On the First Claim for Relief, Count Three for Abuse of a Vulnerable Person:

   a. Treble non-economic damages, as alleged in the First Claim for Relief, in the amount of $750,000.00;

   b. Treble non-economic damages, as alleged in the First Claim for Relief, in the amount of $15,000,000.00;

   c. Treble economic damages, as alleged in the First Claim for Relief, in the amount of $1,500,000.00;

   d. Treble economic damages, as alleged in the First Claim for Relief, in the amount of $15,000.00;

   e. Reasonable attorney fees pursuant to ORS 124.100(2)(c); and

   f. Costs and disbursements incurred herein.

3. On the Second Claim for Relief for Deprivation of Civil Rights:

   a. Non-economic damages in the amount of $5,000,000;

   b. Reasonable attorney fees pursuant to 42 U.S.C. §1988;

   c. Punitive damages in an amount to be determined by a jury; and

**SECOND AMENDED COMPLAINT**

    d. Costs and disbursements incurred herein.

**RESPECTFULLY SUBMITTED** this 11th day of January, 2024.

Plaintiff requests trial by jury.

                                                               s/ Josh Lamborn_____
                                                               Josh Lamborn, OSB 973090
                                                               Attorney for Plaintiff

**SECOND AMENDED COMPLAINT**